IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DANIEL LEE RITZ, JR., | § | CIVIL ACTION: H-11-3020 |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| HUSKY INTERNATIONAL ELECTRONICS, | § | |
| INC., | § | |
| | § | BANKRUPTCY CASE 09-39895-H4-7 |
| Appellant | § | ADVERSARY NO. 10-03156 |
| | § | CHAPTER 7 CASE |
| VS. | § | |
| | § | |
| DANIEL LEE, RITZ, JR., | § | |
| | § | |
| Appellee. | § | |

**OPINION AND ORDER**

Pending before the Court is the above referenced appeal by Appellant Husky International Electronics, Inc. ("Husky"), seeking a reversal of United States Bankruptcy Judge Jeff Bohm's August 4, 2011 memorandum opinion and judgment[1] in Adversary Proceeding 10-03156, discharging a $163,999.38 contractual debt owed by Chrysalis Manufacturing Corp. ("Chrysalis") to Husky for goods Husky sold and delivered to Chrysalis from 2003 to 2007 under a contract and for which Husky has attempted to hold Appellee/Debtor Daniel Lee Ritz,

---

[1] Instrument #9, Appendix A. Also available as *Husky International Electronics, Inc. v. Ritz (In re Ritz)*, 459 B.R. 623 (Bankr. S.D. Tex. 2011).

Jr. ("Ritz"), a director and shareholder of Chrysalis,[2] personally liable.[3]   In this appeal Husky contends that the debt should be excepted from discharge in bankruptcy on the grounds of fraud pursuant to 11 U.S.C. § 523(a)(2), and of willful or malicious injury to Husky or its property, pursuant to 11 U.S.C. § 523(a)(6).

Husky does not challenge the bankruptcy judge's findings of fact or credibility determinations,[4] but only his conclusions of

---

[2] Judge Bohm found, "At all relevant times, the Debtor was in financial control of Chrysalis.  Moreover, he was the director and owner of at least 30% of Chrysalis common stock. [citations omitted]"  *In re Ritz*, 459 B.R. at 627, ¶ 4.

[3] The opening lines of Judge Bohm's memorandum opinion summarize the dispute in the Adversary Proceeding:

> This adversary proceeding concerns an individual debtor [Daniel Lee Ritz, Jr.] who authorized transfers of funds out of one corporation [Chrysalis] into the accounts of several other companies--all of which he controlled.  As a result of these transfers, the one corporation was drained of all its cash and, therefore, could not pay its creditors.  One of these creditors [Husky] has filed suit against the debtor, alleging that:  (a) because of the debtor's actions, [Ritz] has become personally  liable for the debt owed by the corporation; and (b) this debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), & (a)(6).  For the reasons set forth herein, this Court concludes that there is no debt to discharge because the plaintiff failed to establish any liability against the debtor.

Husky has not appealed the ruling under § 523(a)(4), but contests the others.

[4] This Court observes, "'[D]ue regard shall be given to the opportunity of the trial court to judge [] the credibility of witnesses.'"  *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258 (5th Cir. 2006), *citing* Fed. R. Civ. P. 52(a) and *quoting Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573 (1985). "The court owes even greater deference to findings based on the

law.   Husky raises three issues of legal error:

> (1) Did the bankruptcy court err when it ignored that
> fraudulent transfers pursuant to Tex. Bus. & Com. Code §
> 24.005[5] are "actual fraud" within the meaning of Tex. Bus.

---

credibility of witnesses and must uphold them if based on coherent,
internally consistent, and facially plausible testimony that is not
contradicted by external evidence." *Id.* at 259, *citing id.* at 575.
     Of witnesses for Husky, Judge Bohm found the debtor, Ritz, was
not a credible witness because at trial he made statements that
contradicted answers that he had previously given in discovery on
material issues and gave nonresponsive answers to unambiguous
questions.   Memorandum Op., #9, Appendix A at pp. 5-6 (examples
given).   He found that testimony of Nicholas C. Davis, president of
Husky, very credible, as he did the testimony of several other
witnesses:   (1) Nancy K. Finney, comptroller for Ritz-controlled
companies for approximately four years; (2) James D. Rogers, Vice
President of Corporate Finance of CapNet Securities Corporation for
approximately two and a half years; and (3) Richard Hollan, a
shareholder of Institutional Capital Management, Inc., which was
owned 40% by Ritz.   *Id.* at pp.7-8.   Of Ritz's witnesses, he found
Heather Cheaney to be credible, but that her testimony was not
significant; he found Daniel Lee Ritz, Sr. to be credible, but gave
little weight to his testimony, which was biased toward his son; he
found Craig Takacs to be "a bit evasive" and gave little weight to
his testimony; he found L. Andrew Well was not credible; and he
found Marlin R. Williford to be "direct and forthcoming" and
credible, but his testimony did not relate to the transfers of cash
by Ritz out of Chrysalis and into the accounts of other entities
controlled by Ritz.   *Id.* at p. 8.

     [5] The Texas Uniform Fraudulent Transfer Act ("TUFTA"), Texas
Bus. & Com. Code § 24.005, "Transfers Fraudulent as to Present and
Future Creditors," provides,

> (a) A transfer made or obligation incurred by a debtor is
> fraudulent as to a creditor, whether the creditor's claim
> arose before or within a reasonable time after the
> transfer was made or the obligation was incurred, if the
> debtor made the transfer or incurred the obligation:
>
>> (1) with actual intent to hinder, delay, or
>> defraud any creditor of the debtor; or
>>
>> (2) without receiving a reasonably equivalent
>> value in exchange for the transfer or

obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

> (1) the transfer or obligation was to an insider;

> (2) the debtor retained possession or control of the property transferred after the transfer;

> (3) the transfer or obligation was concealed;

> (4) before the transfer or obligation was incurred, the debtor had been sued or threatened with suit;

> (5) the transfer was of substantially all of the debtor's assets;

> (6) the debtor absconded;

> (7) the debtor removed or concealed the assets;

> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) the debtor was insolvent or became insolvent shortly after the transfer was made

Org. Code § 21.223(b)[6]?

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

    or the obligation was incurred;

    (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

    (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

[6] Section 21.223, "Limitation of Liability for Obligations," which applies only to Texas corporations and limited liability companies, recites,

    (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber of the corporation, may not be held liable to the corporation or its obligees with respect to:

    (1) the shares, other than the obligation to pay the corporation the full amount of consideration, fixed in compliance with Sections 21.157-21.162, for which the shares were or are to be issued;

    (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory; or

    (3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including the failure to:

        (A) comply with this code or the certificate of formation or bylaws of the corporation; or

        (B) observe any requirement prescribed by this code or the certificate of formation or bylaws of the corporation for acts to be taken by the

(2) Did the bankruptcy court err when it held that Husky could not prevail under 11 U.S.C. § 523(a)(2)(A) because Husky had failed to prove a fraudulent misrepresentation by Ritz that Husky relied upon?

(3) Did the bankruptcy court err when it held that Husky could not prevail under 11 U.S.C. § 523(a)(6) because Ritz's fraudulent transfers of Chrysalis's cash were not a willful or malicious injury to Husky?

#9 at p.7 (electronic numbering).

After careful review of the record, the briefs, and the applicable law, the Court affirms the bankruptcy court's memorandum and order for the reasons indicated below.

### Standard of Review

This Court has jurisdiction over appeals from "final judgments, orders and decrees" of a bankruptcy court under 28 U.S.C. § 158(a)(1). *See In re Berman-Smith*, 727 F.3d 997, 1000 (5th Cir. 2013). Under 28 U.S.C. § 157(b)(1), a bankruptcy court may hear and

---

corporation or its directors or shareholders.

(b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

Affiliate" means "a person who controls, is controlled by, or is under common control of another person." Tex. Bus. Org. Code § 1.002(1).

"[L]iability of the corporations's shareholder/owner is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." Tex. Bus. Org. Code § 21.224.

determine "core proceedings." Actions to determine the dischargeability of a debt are core proceedings under 28 U.S.C. § 157(b)(2)(B),(I), and (O), and such determinations are exclusively within the jurisdiction of the bankruptcy court. 28 U.S.C. § 523(a)(2). In "reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court." *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).

Conclusions of law of the bankruptcy court are reviewed *de novo*. *In re Chestnut*, 422 F.3d 298, 301 (5th Cir. 2005). Mixed questions of law and fact are also reviewed *de novo*. *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009), *citing In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008).

This Court reviews findings of fact for clear error. *In re Lothian Oil, Inc.*, 650 F.3d 539, 542 (5th Cir. 2011). "A finding of fact is clearly erroneous when the appellate court, viewing the evidence in its entirety, 'is left with a firm and definite conviction that a mistake has been committed.'" *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258-59 (5th Cir. 2006). "If the district court's finding is plausible in light of the record viewed as a whole, the court of appeals cannot reverse even though, if sitting as the trier of fact, it would have weighed the evidence differently." *In re San Patricio Cnty. Cmty. Action*

*Agency*, 575 F.3d 553, 557 (5ᵗʰ Cir. 2009)*, citing Anderson*, 470 U.S. at 573-74."If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.   The appellant bears the burden of showing that a finding of fact by the bankruptcy court is clearly in error.   *In re Davis*, No. 07-33986-H3-7,2012 WL 2871662, at *3 (S.D. Tex. July 10, 2012)(*citing Perry v. Dearing*, 345 F.3d 303, 309 (5ᵗʰ Cir. 2003)), *aff'd*, 538 Fed. Appx. 440 (5ᵗʰ Cir. 2013), *cert. denied*, 134 S. Ct. 1002 (2014).

## Relevant Law

A bankruptcy court has exclusive jurisdiction to decide whether a debt is nondischargeable as defined by the bankruptcy law. *Matter of Dennis*, 25 F.3d 274, 278 (5ᵗʰ Cir. 1994).   As a creditor claiming nondischargeability, Appellant bears the burden of proving by a preponderance of the evidence that the debt is exempt from discharge.   *In re Gauthier*, 349 Fed. Appx. 943, 945 (5ᵗʰ Cir. 2009), *citing Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5ᵗʰ Cir. 2005).   "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5ᵗʰ Cir. 2011), *citing Hudson v. Raggio & Raggio (In re Hudson)*, 107 F.3d 355, 356 (5ᵗʰ Cir. 1997).   Unless the creditor proves that an

exception to discharge applies, the creditor can only collect against the bankruptcy estate. *In re Gauthier*, 349 Fed. Appx. at 945.

## 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A), exempting from discharge a debt obtained by false pretenses, a false representation or actual fraud, provides that

> a discharge under § 727 of this title does not discharge an individual debtor from any debt--for money, property, or services, . . . to the extent obtained by--false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insiders's financial condition.

Although other Courts of Appeals apply the same standard to all § 523(a)(2)(A) claims, the Fifth Circuit in the past has differentiated the elements of "actual fraud" and of "false pretenses and false representations" chronologically, based on whether the representation was made about a past or a future matter. *RecoverEdge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995). A false representation or false pretense under § 523(a)(2) must depict current or past facts, and the creditor must show by a preponderance of the evidence (1) a knowing and fraudulent falsehood, (2) describing past or current facts, that (3) was relied upon by the other party. *Id.* at 1292-93, *citing Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992). *See also Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 602 (5th Cir. 1991)("'A mere promise to be executed in the future is not sufficient to make

a debt nondischargeable, even though there is no excuse for a subsequent breach.'"), *citing* 3 *Collier on Bankruptcy* 15th Ed. . . . § 523.08[4]. A false representation involves an express statement, while "false pretenses may be based on misleading conduct without an express statement." *Walker v. Davis (In re Davis)*, 377 B.R. 827, 834 (E.D. Tex. 2007). Both false pretenses and false representations entail intentional conduct intended to create and develop a false impression. *Id., citing Still v. Patten (In re Patten)*, 225 B.R. 211, 215 (Bankr. Or. 1998).

"'Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another--something done or omitted with the design of perpetrating what is known to be a cheat or deception.'" *RecoverEdge,* 44 F.3d at 1293, *quoting* 3 *Collier on Bankruptcy* ¶ 523.08[5], at 523-57 to 523-58. For actual fraud, the creditor must prove the debtor had the intent to deceive and that the fraud proximately caused the loss by the creditor. *RecoverEdge*, 44 F.3d at 1293. To prevail on a claim that a debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because of actual fraud, a creditor must show by a preponderance of the evidence that (1) the debtor made a misrepresentation, (2) the debtor knew the misrepresentation was false at the time he made it, (3) the representation was made with the intent to deceive the creditor, (4)

the creditor actually and justifiably relied[7] on the representation, and (5) the creditor suffered a loss as a proximate result of its reliance. *In re Acosta*, 406 F.3d at 372. Moreover unlike false pretenses or false representation, actual fraud can focus on a promise of a future performance made with the intent not to perform. *Trenholm v. Ratcliff*, 646 S.W. 2d 927, 930 (Tex. 1983). "Debts that satisfy the third element, the scienter requirement, are debts obtained by frauds involving 'moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made.'" *In re Acosta*, 406 F.3d at 372*, citing In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992). The court may infer an intent to deceive from "'reckless disregard for the truth or falsity of a statement, combined with the sheer magnitude of the resultant misrepresentation.'" *Id.*, *quoting In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995), *citing In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994). Where the speaker has an unreasonable but honest belief that a representation is true and has information justifying that it is, he does not have an intent to deceive, i.e., "a 'dumb' but honest" defendant does not have scienter. *Id., citing Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997). Exceptions to discharge under § 523 should be construed in favor of the debtor. *Fezler v. Davis (In re Davis)*, 194 F.2d 570, 573 (5th Cir. 1999).

---

[7] The Fifth Circuit does not require the creditor to have "reasonably" relied on the representation. *RecoverEdge,* 44 F.3d at 1293 n.17.

As will be discussed, in the wake of *Field v. Mans*, 516 U.S. 59, 71-72 (1995) it is uncertain whether the Fifth Circuit's earlier distinction among the three terms survived *Field*. *In re Mercer*, 246 F.3d at 394-95.

"It is well settled that silence can create a false impression, providing the basis for a misrepresentation that is actionable under § 523(a)(2)(A)." *In re Demarest*, 176 B.R. 917, 920 (Bankr. W.D. Wash. 1995), *aff'd*, 124 F.3d 211 (9th Cir. 1997), *cert. denied*, 525 U.S. 827 (1998). *See also In re Lau*, No. 11-40284, Adv. 11-4203, 2013 WL 5935616, at *18 (Bnkrtcy. E.D. Tex. Nov. 4, 2013)("The failure to disclose a material fact when one has a duty to do so is sufficient grounds for nondischargeability for fraud under § 523(a)(2)(A) of the Bankruptcy Code."). Whether there is a duty to disclose is a question of law for the court. *Id., citing In re Int'l Profit Assocs., Inc.*, 274 S.W. 3d 672, 678 (Tex. 2009). The Fifth Circuit recognizes such a duty in fiduciary or confidential relationships and outside of a fiduciary or confidential relationship when a party voluntarily discloses some, but not all, material factors or where the speaker fails to disclose new information that makes an earlier representation misleading or untrue. *In re Lau*, 2013 WL 5935616, at *19.

In Texas to show fraud by nondisclosure, a subspecies of fraud, the creditor must prove "(1) a party conceals or fails to disclose a material fact within that party's knowledge, (2) the party had a

duty to disclose the fact, (3) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, (4) the party intends to induce the other party to take some action by concealing or failing to disclose the fact, (5) the other party justifiably relies on the nondisclosure, and (6) the other party suffers injury as a result of acting without knowledge of the undisclosed fact." *In re Edelman*, No. 13-31182-BJH, Adv. 13-03126-BJH, 2014 WL 1796217, at *34 (Bnkrtcy. N.D. Tex. May 6, 2014), *citing Bradford v. Vento*, 48 S.W. 3d 749, 755-56 (Tex. 2001).  Plaintiffs must prove these elements by a preponderance of the evidence.  *Id*.

A fact is material if "'disclosure of the fact would likely affect the conduct of a reasonable person concerning the transaction in question.'"  *In re Lau*, 2013 WL 5935616, at *18.

Fraud by nondisclosure requires proof of a duty to disclose. *Bright v. Addison*, 171 S.W. 3d 588, 599 (Tex. App.--Dallas 2005, pet. dism'd, pet. denied).  Texas recognizes that a duty to disclose may arise in four circumstances:  "(1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when the new information makes the earlier misrepresentation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Hoggett v. Brown*, 971 S.W. 2d 472 (Tex. App.--Houston [14[th] Dist.] 1997),

*citing Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*, 941 S.W. 2d 138, 146-47 (Tex. App.--Corpus Christi 1995), *rev'd on other grounds*, 960 S.W. 2d 41 (1997).

Justifiable reliance requires evidence that the plaintiff actually relied on the false representations and that its reliance was justified under the circumstances. *In re Lau*, 2013 WL 5935616, at *20, *citing First Horizon Home Loan Corp. v. Apostle (In re Apostle)*, 467 B.R. 433, 443 (Bankr. W.D. Mich. 3012). Justifiable reliance is a lower standard than reasonable reliance: it does not require the plaintiff to prove reasonableness, nor does it impose a duty to investigate unless the falsity is easily apparent or there are red flags indicating that reliance is not warranted. *Id.*, *citing First Am. Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167, 186 (Bankr. W.D. Mo. 1999); *Guion v. Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012); and *Baker v. Sharpe (In re Sharpe)*, 351 B.R. 409, 423 (Bankr. N.D. Tex. 2005)(A plaintiff "may not blindly rely upon a misrepresentation, the falsity of which would be obvious to the plaintiff had he or she used her senses to make a cursory examination or investigation. '[O]nly where, under the circumstances, the facts should be apparent to a person of the plaintiff's knowledge or intelligence from a cursory glance, or where the plaintiff has discovered something that should serve as a warning that he is being deceived, is [the plaintiff] required to make an investigation of his own.'"), *citing Field v. Mans*, 516 U.S.

59, 71-72 (1995).   Justifiable reliance is not an objective standard:  to determine if reliance is justified the court looks at the circumstances of an individual case and the traits of a particular plaintiff.  *Id.*, *citing Manheim Automotive Financial Services, Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 133-34 (Bankr. N.D. Tex. 2005), and *Field v. Mans*, 516 U.S. 59, 70-71 (1995)(Justifiable reliance incorporates "the qualities and characteristics of the particular plaintiff and the circumstances of the particular case, rather than of the application of a community standard of conduct in all cases.").

## 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Federal Bankruptcy Code bars discharge of debt incurred for "willful and malicious injury by the debtor to another entity or to the property of another entity."  An injury is "willful and  malicious" for purposes of § 523(a)(6) "where either (1) there is an objective substantial certainty of harm or (2) there exists a subjective motive to cause harm."  *In re Edelman*, 2014 WL 1796217, at *42; *In re Miller*, 156 F.3d at 606.  The statute covers physical damage and harm to personal or property rights.  *In re Edelman*,  2014 WL 1796217, at *42.

Where the primary debt is nondischargeable under § 523(a)(2)(A) and/or (a)(6), related ancillary awards including attorney's fees and interest are also nondischargeable.  *In re Edelman*, 2014 WL 1796217, at *43.

-15-

## **Liability of Owner or Shareholder of a Corporation for Breach of Contract Claims**

"The corporate form normally insulates shareholders, officers and directors from liability for corporate obligations . . . ." *Castleberry v. Branscum*, 721 S.W. 2d 270, 271 (Tex. 1986), *superseded in part* by former Bus. Corp. Act art. 2.21, recodified at Tex. Bus. Org. Code Ann. § 21.223. Traditionally, the alter ego doctrine is relevant "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Castleberry*, 721 S.W. 2d at 272. *Castleberry*, which required only a showing of constructive fraud to pierce the corporate veil, identified seven theories for piercing the corporate veil to hold individual shareholders liable for corporate acts: (1) the corporate fiction is used to perpetrate fraud ("a sham to perpetuate a fraud"); (2) the corporation is organized and operated as a mere tool or business conduit of another corporation (alter ego); (3) the corporate fiction is used to evade an existing legal obligation; (4) the corporate fiction is used to achieve or perpetuate monopoly; (5) the corporate fiction is used to circumvent a statute; (6) the corporate fiction is relied upon as a protection of crime or to justify wrong; and (7) where the corporation is inadequately capitalized. 721 S.W. 2d at 272. Alter ego "is shown from the total dealings of the corporation and the individual, including the

degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry*, 721 S.W. 2d at 272.

Nevertheless, to limit *Castleberry*, in 1989 the Legislature placed strict restrictions on a contract claimant's ability to pierce the corporate veil; now codified at § 21.223 of the Texas Business Organizations Code, the statute states,

> (a) A holder of shares [or] owner of any beneficial interest in shares . . . may not be liable to the corporation or its obligees with respect to . . .
>
>> (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder [or] beneficial owner is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud or other similar theory . . . .
>
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder [or] beneficial owner . . . if the obligee demonstrates that the . . . beneficial owner . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder [or] beneficial owner . . . .

Any such liability for an obligation on behalf of the corporation "is exclusive and preempts any other liability imposed for that obligation under common law or otherwise." *Id.* § 21.224; *Lone Star Air Systems, Ltd. v. Powers*, 401 S.W. 3d 855, 862-63 (Tex. App.-- Houston [14th Dist.] 2013). In a breach of contract case, section

21.223 requires proof of actual fraud to pierce the corporate veil on the basis of alter ego, i.e., the shareholder caused "the corporation to be used for the purpose of perpetrating and did perpetrate a fraud." *Rimade*, 388 F.3d at 143.  "Actual fraud" "involves dishonesty of purpose or intent to deceive."  Tex. Bus. Corp. Act Ann., art. 221(A)(2)("[T]he . . . owner . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the . . . owner . . . .".   Thus § 21.223 overruled *Castleberry* to the degree that a failure to observe corporate formalities is no longer a factor in proving alter ego in contract claims, and it eliminated constructive fraud as a means to pierce the corporate veil.[8]  *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67-68 & n.4 (5th Cir. 1994)(narrowing *Castleberry's* list to "three broad categories in which a court may pierce a corporate veil" under Texas law:  (1) the corporation was the alter ego of its owners and/or shareholders; (2) the corporation was used for illegal purposes; and (3) the

---

[8] *See also Hidden Values, Inc. v. Wade*, Civ. A. No. 3:11-CV-1917-L, 2012 WL 1836087, at *4 n.4 (N.D. Tex. May 18, 2012)("Section 21.223 is the amended , codified version of article 2.21 of the Texas Business Corporation Act and was adopted by the Texas legislature to limit a shareholder's personal liability for the contractually related obligations of a corporation and requires a showing that 'actual fraud,' rather than some lower threshold of wrongful conduct, has been perpetrated through use of the corporate form for the direct personal benefit of the corporations's shareholder that is sought to be charged with liability.").

corporation was used as a sham to perpetrate fraud); *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004).  "In other words, alter ego or other similar theories may be used to pierce the corporate veil *only if* (1) actual fraud is shown, and (2) it was perpetrated primarily for the direct personal benefit of the holder." *Ocram, Inc v. Bartosh*, 2012 WL 4740859, *3 (Tex. App.--Houston [1[st] Dist.] Oct. 4, 2012).

Actual fraud is "the misrepresentation of a material fact with the intention to induce action or inaction, reliance on the misrepresentation by a person who, as a result of such reliance, suffers injury." *Trustees of Northwest Laundry and Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994), *cert. denied*, 513 U.S. 1155 (1995).  The elements of actual fraud are "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *DeSantis v. Wackenhut Corp.*, 793 S.W. 2d 670, 688 (Tex. 1990).  If an obligee shows that the shareholder used the corporation to perpetrate fraud on the obligee for the shareholder's direct personal benefit, the shareholder is liable under § 21.223(b).  *Willis v. Donnelly*, 199 S.W. 2d 262, 272 (Tex. 2006)(statute precludes the use of common law veil-piercing theories).

### Husky's Opening Brief (#9)

Husky is a Colorado seller of electronic device components which sold to Chrysalis, a manufacturer of electronic circuit boards, from 2003 to 2007 certain goods for $163,999.38, which debt Chrysalis failed to pay.

Husky sued Chrysalis in this district in May 2009, *Husky Int'l Electronics, Inc. v. Ritz*, H-09-1532, asserting that Ritz was personally liable under Texas Business Organizations Code § 21.223(b) for Chrysalis's $163,999.38 corporate debt to Husky. In December of that year Ritz filed an involuntary bankruptcy petition. #9, Appendix A. On March 31, 2010, Husky commenced the adversary proceeding from which this appeal is taken, objecting to the discharge of that corporate debt under the exceptions set out in 11 U.S.C. § 523(a)(2), (a)(4),[9] and (a)(6). *Id.*

Regarding appellate issue one (Did the bankruptcy court err when it ignored that fraudulent transfers pursuant to Texas Business and Commerce Code § 24.005 are "actual frauds within the meaning of

---

[9] Title 11 U.S.C. 523(a)(4) provides that "[a] discharge under section 727 . . . does not discharge an individual from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Its purpose is to deal with circumstances where "debts [are] incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that was not the debtor's." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 502 (5th Cir. 1998), *citing In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987). As noted, Husky did not appeal the ruling denying this claim.

Texas Business Organizations Code §21.223(b)?"), Judge Bohm found that at all relevant times, Ritz had financial control of Chrysalis, was a director of Chrysalis, owned a minimum of 30% of Chrysalis's common stock, was not paying its bills as they came due, and Chrysalis's debts were greater than all of its assets at fair valuation.  Given the last two facts, Chrysalis qualified as insolvent under Texas Business & Commerce Code § 24.003(a) and (b).[10]

Judge Bohm further found that between November 2006 and May

_____

[10] Section 24.003(a) and (b) provided,

(a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.

(b) A debtor who is generally not paying a debtor's debts as they become due is presumed to be insolvent.

A debtor is insolvent under the Uniform Fraudulent Transfer Act ("TUFTA") if it meets this definition after transfers.  *Corpus v. Arriago*, 294 S.W. 3d 629, 637 (Tex. App.--Houston [1st Dist.] 2009).  Texas Business & Commerce Code § 24.006, "Transfers Fraudulent as to Present Creditors," provides,

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

-21-

2007, when Chrysalis stopped doing business, Ritz caused the insolvent Chrysalis to transfer the following funds to eight entities owned and controlled by Ritz, resulting in Husky's damages of $163,999.38, i.e., that amount Chrysalis owed Husky for the goods Husky shipped to Chrysalis. Judge Bohm also ruled that Chrysalis did not receive a reasonably equivalent value in exchange for the transfers. The following transfers are identified:

1. $677,622.00 to Ritz's ComCon Manufacturing Services, Inc. a/k/a VirTra Merger Corporation;

2. $121,831.00[11] to Ritz's CapNet Securities Corporation;

3. $52,600.00 to Ritz's CapNet Risk Management, Inc.;

4. $172,100.00 to Ritz's Institutional Capital Management, Inc. and Ritz's Institutional Insurance Management, Inc.;

5. $99,386.00 to Ritz's Dynalyst Manufacturing Corporation;

6. $11,240.00 to Ritz's CapNet Advisors Incorporated.

Moreover Judge Bohm found,

At all relevant times, the Debtor owned: (1) 30% of Chrysalis; (2) 85% of CapNet Securities Corporation; (3) 100% of CapNet Risk Management, Inc.; (4) 100% of Institutional Insurance Management, Inc.; (5) 40% of Institutional Capital Management, Inc.; (6) 25% of Dynalyst Manufacturing Corporation; and (7) 20% of Clean Fuel International Corp., a/k/a Gulf Coast Fuels. 459 B.R. at 628, ¶ 14.

Under TUFTA, Tex. Bus. & Com. Code § 24.005(a)(2)(B)(see

---

[11] The Complaint alleged $121,821.00.

footnote 4), if the debtor made a transfer without receiving a reasonably equivalent value in exchange and the debtor "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due," the transfer is fraudulent as to the creditor.   Judge Bohm found there was no doubt that the evidence proved that the transfers of $1.2 million were fraudulent as to Husky and possibly other creditors.

At a hearing on July 13, 2011, however, the bankruptcy court held that "actual fraud" under Texas Business Organizations Code § 21.223(b) can only be fraud by misrepresentation, the first issue challenged by Husky.  Judge Bohm determined that "[n]o exhibits were introduced and no testimony was adduced indicating that the Debtor made any oral or written representations to Husky inducing Husky to enter into a contract with Chrysalis.  The only communication that the Debtor ever had with Husky was a telephone conversation between Husky's founder and president, Nick Davis, and the Debtor **after** the parties had entered into a contract and Husky had already shipped the product to Chrysalis."  #2-13 at pp. 4-5.  While Judge Bohm found Ritz "to be a witness with virtually no credibility" and he thought Ritz "drained Chrysalis of a lot of money," because Judge Bohm found that Ritz made no representations to Husky, Husky could not recover its damages for fraud under § 21.223(b).  Doc. 20, 7:21-8:11.

In his memorandum opinion, #2-13, Judge Bohm clearly stated that actual fraud under Texas law is defined as "the misrepresentation of a material fact with intention to induce action or inaction, reliance on the misrepresentation by a person who, as a result of such reliance, suffers injury." *Id.* at p.12, *citing Trustees of the N.W. Laundry & Dry Cleaners Health and Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994). He identified the elements of actual fraud in Texas as "(1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Id.* at pp. 12-13, *citing Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010). He reiterated that "the record is wholly devoid of any such representation made by the Debtor" and concluded that because "Husky's common law fraud cause of action must fail," his claims under § 22.223 and § 523(a)(2)(A) must fail. *Id.* at p. 13.

At trial Husky contended that the Ritz-directed transfers of $1.2 million from Chrysalis to other Ritz-controlled entities for Ritz's direct personal benefit were fraudulent transfers under

TUFTA, Texas Bus. & Com. Code § 24.005(a).  In this appeal, relying heavily on *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000)(opining that allowing a debtor, who fraudulently transferred valuable property in order to keep it out of the hands of a creditor, to use bankruptcy to shield herself from liability "is as blatant an abuse of the Bankruptcy Code as we can imagine," and "turns bankruptcy into an engine for fraud,"[12]), Husky argues that the law does prohibit Ritz from defrauding Husky by the fraudulent transfers despite the absence of a representation by Ritz to Husky. In 1989 the Texas Legislature amended article 2.21 of the Texas Business Corporations Act, amended again in 2011 and now Texas Business Organizations Code § 21.223, and significantly narrowed the bases for corporate veil piercing that had been recognized in *Castleberry*, 721 S.W. 2d at 271-72.  Husky argues that Judge Bohm erred in holding that actual fraud is limited to fraud by misrepresentation.  *Citing McCarthy v. Wani Venture, A.S.*, 251 S.W. 3d 573, 591 (Tex. App.--Houston [1st Dist.] 2007, pet. denied)(actual fraud not limited to misrepresentation; affirming jury verdict of actual fraud under § 21.223(b) based on shareholder's fraudulent transfers of cash out of debtor company (applying corporate veil piercing principles to LLCs) to other companies in which the shareholder had "direct ownership and/or financial interest," i.e., using a corporation as "a sham to perpetuate a fraud").

---

[12]  Doc. 20 in Adversary Proceeding 10-3156.

TUFTA also makes a transfer fraudulent as to a creditor where it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1). Judge Bohm found two badges of fraud[13] in the transfers of the $1.2 million, establishing actual intent under TUFTA § 24.005(a)(1): the value of consideration received by Chrysalis was not reasonably equivalent to the asset's value; and Chrysalis was insolvent when Ritz made the transfers.  The evidence established two others: the transfers were made between November 2006 and May 2007 to "insiders" because Ritz was a director, officer or person in control of each of the transferee corporations; and Chrysalis was threatened with suit by Husky president Nick Davis during a conversation with Ritz on or around January 12, 2007 and Davis filed suit on January 23, 2007.

---

[13] *See Mladenka v. Mladenka*, 130 S.W. 3d 397, 405 (Tex. App.-- Houston [14th Dist.] 2004, no pet.)(Because direct proof of fraud is usually not available,  circumstantial evidence, i.e., "badges of fraud," may be used to determine intent under § 24.005(a)(1): whether  "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed the assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."). § 24.005(b).  If several of the badges of fraud are found, they can give rise to an inference of fraud. *Roland v. U.S.*, 838 F.2d 1400, 1403 (5th Cir. 1988).

Husky also contends that it proved that Ritz perpetrated the fraudulent transfers of $1.2 million for his "direct personal benefit." Fraudulent transfer of assets to a corporation owned 100% by the individual defendant has been found to be a "direct personal benefit." *Nick Corp. v. JNS Aviation, LLC (In re JNS Aviation, LLC)*, 376 B.R. 500, 530-31 (Bkrtcy. N.D. Tex. 2007)(owners of an aviation company against which a creditor obtained a default judgment, transferred the aviation company's assets to a newly formed entity to avoid satisfying the judgment; affirming bankruptcy court's findings of actual fraud and direct personal benefit). The same where the defendant had direct ownership and/or a financial interest in various corporate entities that received diverted sums due to another undercapitalized entity. *McCarthy*, 251 S.W. 3d 573. "Any benefit" bestowed on the company is a personal benefit to the majority owner and controller. *David W. Morrison Western Builders of Amarillo, Inc. v. Morrison (In re David W. Morrison Western Builders of Amarillo, Inc.)*, 361 B.R. 107, 120 (Bkrtcy. W.D. Tex. 2007)(concluding under article 2.21(a)(2) that president and majority shareholder of an excavation company, Morrison, received direct personal benefit from misrepresenting the dire financial health of the corporation to obtain a contract for the corporation to keep the corporation in business and draw his substantial salary and maintain his lifestyle), *aff'd*, 555 F.3d 473 (5th Cir. 2009).

Husky argues that Ritz's transfer of $1.2 million of the

insolvent Chrysalis's cash to entities of which Ritz owned and/or
controlled substantial percentages comprised a "direct personal
benefit" to Ritz within the meaning of § 21.223(b).  Ritz even
testified at trial that the transfers personally benefitted him.
#2-9, p. 66:19-21 (transfers to CapNet Securities); 66:23-67:6
(transfers to Clean Fuels or Gulf Coast Fuels); 67:7-10 ($96,000
transferred from Chrysalis to Dynalyst Manufacturing); 67:11-17 (all
$1.2 million).  Husky argues that the bankruptcy court erred as a
matter of law in failing to recognize these fraudulent transfers
were "actual frauds" within the meaning of Tex. Bus. Orgs. Code §
21.223(b).

Regarding the second issue of law, (did the bankruptcy court
err when it held that Husky could not prevail under 11 U.S.C. §
523(a)(2)(A) because Husky had failed to prove a fraudulent
misrepresentation by Ritz that Husky relied upon?), Husky maintains
that the exception to discharge in bankruptcy "for money, property,
services, or an extension, renewal, or refinancing of credit, to the
extent obtained by false pretenses, a false representation, or
actual fraud" under 11 U.S.C. § 523(a)(2)(A) is also "not limited to
'fraudulent misrepresentation.'"  *McClellan*, 217 F.3d at 892-93
(reversing bankruptcy court and holding "the statute makes clear
that actual fraud is broader than misrepresentation")(citing 4
*Collier on Bankruptcy* § 523.08[1][e], p. 523-45. (15th ed., Lawrence
P. King, ed., 2000), defining actual fraud as "any deceit, artifice,

trick, or design involving direct and active operation of the mind, used to circumvent and cheat another").[14]   The Seventh Circuit opined, "Nothing in the Supreme Court's opinion [in *Field v. Mans*, 516 U.S. 59, 68 (1995)] suggests that misrepresentation is the only type of fraud that can give rise to a debt that is not dischargeable under section 523(a)(2)A)." *Id.* at 892.  Although misrepresentation is "the most common type of fraud," cases holding that fraud equals misrepresentation are often "cases in which the only fraud charged was misrepresentation." *Id.*   In finding that the fraudulent transfers asserted in *McClellan* were actual frauds that would justify a denial of the debtor's discharge under § 523(a)(2)(A), the Seventh Circuit wrote,

> No learned inquiry into the history of fraud is necessary to establish that it is not limited to misrepresentations and misleading omissions.  "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth.  No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." [citation omitted]

*Id.* at 893 ("here the transfer involved *actual* fraud" because "the debtor's brother was *deliberately* attempting to thwart McClellan's effort to collect the debt due him").  Thus the bankruptcy court erred as a matter of law in limiting the fraud to misrepresentation,

---

[14] *In accord, Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 876-78 (6th Cir. BAP 2001); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 691 (10th Cir. BAP 2013).

insists Husky.

Relating to Husky's final issue (Did the bankruptcy court err when it held that Husky could not prevail under 11 U.S.C. § 523(a)(6) because Ritz's fraudulent transfers of Chrysalis's cash were not a willful or malicious injury to Husky?), Husky notes that the bankruptcy judge found that the record was "wholly devoid" of evidence that Ritz willfully and maliciously injured Husky or Husky's property and therefore could not prevail under 11 U.S.C. § 523(a)(6).[15]   Husky finds that this conclusion conflicts with the bankruptcy court's findings about Ritz's fraudulent transfers,[16] that Ritz "orchestrated" the fraudulent transfers, that Ritz "drained Chrysalis of a lot of money,"[17] i.e., $163,999.38, and Judge Bohm's stated belief that "what Mr. Ritz did should not be allowed."[18] Judge Bohm criticized Husky's complaint for making only a "glancing reference" to § 523(a)(6) and Husky for failing to do any briefing on the statute.   Husky states that its briefing focused on Ritz's fraudulent transfers, which it argues should except Ritz's debt from discharge under either § 523(a)(2) and § 532(a)(6).   Husky further notes that a number of courts suggest that when a debtor's conduct is willful and malicious, the creditor should seek

---

[15] App. A, p. 16.

[16] App. A, pp. 3-4. ¶¶ 7-13.

[17] Doc. 20, 7:21-8:11.

[18] *Id.*, 11:16-19.

-30-

nondischargeability under both statutes. *See, e.g., Stokes v. Ferris*, 150 B.R. 388, 392 (W.D. Tex. 1992); *McClellan*, 217 F.3d at 896 (Tripple, J., concurring). A wrongful act done intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse is "willful and malicious" within the meaning of § 523(a)(6). *Miller v. J.D. Abrams, Inc.*, 156 F.3d at 601.

Husky urges that Judge Bohm's finding that there was no proof of willful and malicious injury appears to be based on his erroneous conclusion that a fraudulent transfer is not an "actual fraud" under Tex. Bus. Orgs. Code § 21.223(b). Ritz's draining Chrysalis's cash and transferring it to his other companies to avoid paying Husky the $163,999.38 that Chrysalis owed Husky is an "actual fraud" under § 21.223(b), and therefore a "malicious and willful tortious conduct." Thus Ritz's debt to Husky should be excepted from discharge under § 523(a)(6).

### Appellee's Brief (#10)

Ritz objects to Husky's statement of facts first with regard to Husky's characterization that the transfers of cash from Chrysalis to seven entities, all active business operations, were made without Chrysalis's receiving equivalent value. Ritz concedes that the transfers were made, authorized by him, but argues that they were repayments of loans that these entities extended to Chrysalis on a continuous basis to finance its business operations. Ritz provides

details about each.  #10 at pp. 1-6.  He also claims that before 2006 there was a plan to merge two of them (ComCon a/k/a Virtra Merger and Dynalyst Manufacturing) with Chrysalis into a single business operated by ComCon, which accounted for a number of the loans and repayments, but the proposed merger failed in 2007.

Next, Ritz addresses the § 523(a)(2) claims.  Acknowledging that Judge Bohm correctly stated the traditional elements of a claim for "actual fraud" under Texas common law (Mem. Op. at pp. 12-13), the Fifth Circuit has stated the same elements for a § 523(a)(2) dischargeability claim, but Ritz describes the elements slightly differently:  the objecting creditor must show by preponderance of the evidence that (1) the debtor made representations (2) that the debtor knew were false when he made them, (3) the representations were made with the intention and purpose to deceive the creditor, (4) the creditor relied on the representations, and (5) the creditor suffered losses as a proximate result of the representations. *RecoverEdge*, 44 F.3d at 1293.  Observing that a claim for "actual fraud" can be based on an affirmative misrepresentation, on a failure to disclose if there is a duty to disclose, or on an affirmative concealment of material facts, Ritz maintains that there is no evidence that he made any misrepresentations or intentionally concealed any material facts from Husky.  Ritz had no duty to disclose, first because he never made any partial disclosures to and he did not have a fiduciary relationship with Husky.  Furthermore,

such a claim must fail because Husky never pleaded a failure to disclose in the complaint or joint pretrial order.  Instead the Complaint alleged that the checks signed by Ritz and given to Husky were bad, but even that claim was dropped at trial when it became apparent that Ritz's father had signed the checks.  Husky waived any claim for failure to disclose by not pleading it or arguing it during trial.  Second, the duty to disclose claim fails as a matter of law because such a duty arises only where there is a partial disclosure  or a fiduciary duty.  Ritz had no contact, dealings or miscommunications with Husky or any of its representatives until mid-January 2007, after Chrysalis had shipped all of its products to Chrysalis and Ritz attempted to resolve the dispute, so he did not make a partial disclosure that might trigger such a duty to disclose.  Judge Bohm found there was no fiduciary relationship between Ritz and Husky, and Husky did not contest that ruling on appeal.

Actual fraud "consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another--something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.'" *RecoverEdge*, 44 F.3d at 1293, *quoting* 3 *Collier on Bankruptcy* ¶ 523.08[5] at 523-57 to 523-58 (footnote omitted). Husky's claims that Ritz engaged in an "unlawful artifice, device, or scheme to defraud" Husky fail because Ritz (1) did not make any

false representations and failed to disclose or to intentionally conceal facts; (2) had no communications, interactions or dealings with Husky; and (3) had no fraudulent intent to deceive that was relied upon by Husky.   Furthermore Husky's fraud claim fails as a matter of law because the property obtained by Chrysalis was not obtained because of any fraudulent conduct.   Citing c, Ritz argues that Texas common law as a matter of law shows that the facts of this case could not sustain a claim of actual fraud based on Husky's newly pleaded theory because there is no false representation, nor duty to disclose intentional concealment of a material fact, nor evidence of scienter.   While Ritz agrees that "'actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions, . . . when a debtor intentionally engages in a scheme to deprive or cheat another of property or of a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy. Code.'"   *In re Lewis*, No. 09-41111, ADV 09-4101,  2010 WL 1379770, at *3 (Bkrtcy. E.D. Tex. Mar. 30, 2010)(*quoting Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001)), *aff'd*, *Lewis v. Hill*, No. 4:10cv242, 2011 WL 1299613 (E.D. Tex. Mar. 31, 2011).   The Bankruptcy Code "does not permit bankruptcy courts to 'act as roving commission[s] to do equity."   *Id.* at *4, *citing Southmark Corp. v. Grosz*, 49 F.3d 1111, 1116 (5th Cir. 1995).   Actual fraud is limited to "frauds involving

'moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *RecoverEdge*, 44 F.3d at 1292.

Regarding claims under § 523(a)(6), Husky has the burden to prove that Ritz had either a subjective intent to harm Husky by causing Chrysalis not to pay Husky for the goods Chrysalis had received from Husky or that Ritz engaged in conduct that was substantially certain to harm Husky or its property by not receiving that payment. Ritz contends there is no evidence that he committed an act of willful and malicious injury, or that he had a subjective motive to not pay Husky. Indeed the evidence revealed that Ritz had no part in the purchase of the goods and was unaware of the unpaid debt until after Husky had already sold and delivered the goods to Chrysalis. Nor does the record contain any evidence that Ritz acted with intent to deprive Chrysalis of payment. Second there is no evidence that Husky was objectively certain not to receive payment as a result of the transfers. When the transfers were occurring, Chrysalis was open, operating, manufacturing product, paying employees, and producing income until May 2007, when it stopped.

Ritz insists that Husky's complaint never pleaded or argued any claim for relief under TUFTA, i.e., that Ritz intended to hinder, delay, or defraud creditors or that transfers lacked reasonably equivalent value,[19] but only asked to court to void "all fraudulent

---

[19] Tex. Bus. & Com. Code §§ 24.005(a) & (b); 24.006(a).

transfers to the extent necessary to satisfy Plaintiff's claims" and in the joint pretrial order stated that "Chrysalis's fraudulent transfer . . . was an actual fraud against the rights of Husky and personally benefitted Ritz."[20]   Husky did state in closing argument and in its brief (#90, 10) that Ritz violated TUFTA § 24.006(b) and that this violation automatically supports a finding of actual fraud under Texas and federal common law, but Ritz maintains that the equation is incorrect.   While findings of the bankruptcy court could support the legal conclusion that Ritz violated TUFTA, the bankruptcy court rejected these facts when it decided that Ritz was

_____

[20]   Husky responds that transfers are also statutorily fraudulent if made to an "insider" while the debtor was insolvent, as it has alleged under Texas Business and Commerce Code § 24.006(b), which is part of TUFTA.   Section 24.006(b) provides,

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.

See Telephone Quip. Network v. TA/Westchester Place, 80 S.W. 3d 601, 609 (Tex. App.--Houston [1st Dist.] 2002, no pet.)(An "insider" is an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny"; courts consider the closeness of the relationship between the transferee and the debtor and whether the transactions were at arm's length), citing Matter of Holloway, 955 F.2d 1008, 1009-11 (5th Cir. 1992).   "Insider" under the statute includes "a corporation of which the debtor is a director, officer, or person in control." Holloway, id., citing Tex. Bus. & Com. Code § 24.002(7).   Judge Bohm found that Chrysalis was insolvent at all relevant times and that Ritz was a director, officer or person in control of each of the transferee entities; thus Ritz's eight transfers were fraudulent under Texas law.

not guilty of actual fraud.  Judge Bohm properly refused to apply TUFTA concepts relating to fraudulent transfers into the actual fraud analysis under § 523(a)(2).

It is well established that scienter or fraudulent intent is a necessary element of actual fraud, e.g., as in debts obtained by frauds involving "moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made," but the bankruptcy judge did not find that Ritz acted with fraudulent intent. *Acosta*, 406 F.3d at 372.  Ritz claims that he justified the transfers from Chrysalis to the seven entities by demonstrating that the inbound transfers made by the seven entities (loans to pay Chrysalis's debt and payroll obligations) exceeded the outbound by $924,000, mostly in very close timing to the outbound transfers.

Ritz observes that Husky relies on *McClellan*, 217 F.3d 890 (holding that a damage award issued as a result of a fraudulent transfer made with an actual intent to hinder, delay or defraud creditors qualifies as a type of nondischargeable "actual fraud" under § 523(a)(2)).  Ritz argues that *McClellan* demonstrates that Ritz's conduct does not constitute actual fraud.  In *McClellan* the Seventh Circuit has a lengthy discussion of the difference between constructive fraud, transfers for less than adequate consideration, and actual fraud, transfers made with an intent to hinder or delay creditors.  Only actual fraud satisfies the fraud exception to the dischargeability of debts. *Id*. at 894.  As the Seventh Circuit

wrote, *id.*,

> The distinction between actual and constructive fraud is
> the key to this case in two distinct senses. *First.* To
> transfer property for less than adequate consideration may
> be desperate, foolish, or imprudent, and the receipt of
> such a transfer a pure windfall, but neither the transfer
> nor the receipt is in and of itself dishonest, and so
> neither is an appropriate ground for refusing to allow the
> debtor to discharge the debt arising from the transfer and
> thus to get on with his life without the debt hanging over
> his head.[21]

Ritz emphasizes that Judge Bohm found that the transfers were made

without reasonably equivalent value, a finding that could support a

conclusion of constructive fraud.  Judge Bohm did not find that Ritz

made the transfers with a specific intent to hinder or defraud

creditors.  Moreover, insists Ritz, the record does not support a

finding that the transfers were made with an intent to hinder or

---

[21] Husky objects that Ritz has quoted this section out of
context, eliminating key sentences that follow it and qualify it:

> The situation is entirely different, and the debtor's
> equities and argument for discharge much weaker, when the
> debtor is guilty of intent to defraud.  The purpose of
> section 523(a)(2)(A) in confining nondischargeability to
> actual fraud is merely to recognize this difference and
> thus to exclude constructive fraud.

217 F.3d at 894.  The allegation in *McClellan* was that "the
transfer involved actual fraud; the debtor's brother was
deliberately attempting to thwart McClellan's effort to collect the
debt due him," i.e., the brother and sister were acting "in
cahoots" and the sister was a "full and equal participant in her
bother's fraud."  *Id.*  Husky contends that the same reasoning
applies here, where Ritz was transferring Chrysalis's cash to
*himself* by way of companies he owned and controlled; he and his
company were "in cahoots" and full and equal participants in the
scheme to defraud Husky, so Ritz should be denied a discharge under
§ 513(a)(2).

delay creditors.    Instead, the facts demonstrate at most constructive fraud in that (1) the inbound transfers exceeded the outbound by $914,000; (2) Chrysalis continued manufacturing until May 2007; (3) in February 2007 Ritz executed a personal guarantee of an unpaid $133,000 debt for parts owed to Arrow Electronic; and (4) the business operations generated gross income in excess of its ongoing payroll obligations until May 2007.

Husky also cites *McCarthy*, 251 S.W. 3d 573, but, according to Ritz, misinterprets it as holding that a fraudulent transfer under Tex. Bus. & Com. Code § 24.001 automatically constitutes actual fraud as contemplated by Texas common law and Tex. Bus. Orgs. Code § 21.223(b).  He insists that *McCarthy* did not involve a fraudulent conveyance under TUFTA and did not deal with allegations that the shareholder transferred assets for unfair consideration (constructive fraud) or with intent to defraud creditors (actual fraud).   TUFTA addresses fraudulent transfers to third parties in order to place the assets beyond the reach of creditors trying to collect their debts.  Transfers that violate the statute can be made either without "reasonable equivalent value," which does not constitute actual fraud, or with intent to hinder or delay, which may constitute actual fraud under *McClellan*.   In *McCarthy*, the defendant used a corporation as a front to borrow funds and order wallboard on credit so he could divert the funds to his personal use and benefit, i.e, conversion (taking the property of another without

-39-

consent for the taker's own use and benefit), not a fraudulent
conveyance (transferring property owned by the debtor to a third
party to avoid satisfying the claims of creditors). Ritz could not
find a Texas case holding that any fraudulent conveyance, as opposed
to conversion of assets, constitutes actual fraud.

Even if Husky is correct that actual fraud includes more than
affirmative misrepresentations, even if the transfers can be
construed as a fraudulent artifice or device, and even if Ritz has
the requisite scienter, Ritz contends that Husky's § 523(a)(2) claim
still fails as a matter of law because Chrysalis did not obtain the
property by means of any fraudulent conduct, and the debt incurred
by Chrysalis to Husky was the result of the sale of property, not of
actual fraud.[22] Moreover the statute also requires the creditor to

-----

[22] Husky responds that it never argued that Chrysalis
fraudulently obtained any property. It suggests that Ritz's error
came from his assumption that Ritz's fraud occurred at the
inception of the commercial debt owed by Chrysalis to Husky. The
Bankruptcy Code broadly defines "debt" as any "right to payment,"
liquidated or unliquidated, disputed or undisputed, legal or
equitable." 11 U.S.C. § 101(12) and § 101(5); *Johnson v. Home
State Bank*, 501 U.S. 78, 83-84 and n.5 (1991). In *McClellan* the
original debt was not the one in dispute: "The debt at issue here
is the debt that the sister incurred to McClellan by committing a
fraud against him. Because it was an actual fraud, the debt that
gave rise to it is not dischargeable." 271 F.3d at 895. The
*McClellan* court further observed, "Stated differently, the brother
gave his sister McClellan's security interest, McClellan's
property, which means that she was taking property from--
defrauding--McClellan directly." *Id.* Here the debt rose as a
matter of law when Ritz prevented Husky from collecting from
Chrysalis by draining the insolvent Chrysalis of $1.1 million it
had remaining and transferring it to companies owned and controlled
by Ritz and used as mere conduits to himself. *Id.*

prove a direct nexus between the debt for the money property or services and the fraudulent activity, i.e., the actual fraud must have been part of the transaction which created the debt incurred to by the parts from Husky. *Field v. Mans*, 516 U.S. at 64 (barring discharge of debts 'traceable to" fraud); *Nunnery v. Rountree* (*In re Rountree*), 478 F.3d 216, 219 (4th Cir. 2007)("The plain language of [§ 523(a)(2)] . . . requires the debtor to have obtained money, property, services, or credit through her fraud or use of false pretenses. . . . Congress excepted from discharge not simply any debt incurred as a result of fraud, but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit."); *McCrory v. Spigel*, 260 F.3d 27, 32 (1st Cir. 2001)(although the transactions involved fraud, there was no proof of a direct link between the fraud and the debt).  The sale of parts from Husky to Chrysalis was handled by Chrysalis's California sales representatives; Ritz had no part in it.  Thus there was no nexus between the debt for the sale of parts and any fraud committed in connection with Ritz's transfers of the cash.

Ritz further argues that *McClellan* was wrongly decided for at least two reasons.  First, before it was issued in 2000, a fraudulent conveyance, which was a matter of state statute, was never viewed as actual fraud.  The Bankruptcy Code has statutes that address the avoidance and denial of discharge relating to fraudulent transfers.  11 U.S.C. §§ 548, 550, and 727.  Ritz asserts that it

was not likely that Congress viewed fraudulent conveyance as an element of nondischargeable fraud when the Bankruptcy Code already included statutes addressing the same subject.  Second, *McClellan* in effect deletes the "for money, property or services . . . to the extent obtained by" clause out of the statute by providing an end run around the "obtained by" requirement; it helped courts to create a new debt for damages relating to the fraudulent transfer to a third party instead of a transfer of money, property or services from the creditor to the debtor.  *McClellan*, 217 F.3d 895.  At the least the *McClellan* interpretation is strained; at worst it is judicial activism that should not be followed.  Even if the Court finds the *McClellan* interpretation to be reasonable, Husky did not plead or try the case to collect damages for a fraudulent conveyance, Ritz argues, but only to collect the amount still due on the sale of the parts to Chrysalis.

Regarding Husky's claim under § 523(a)(6), Husky bore the burden to prove by a preponderance of evidence that Ritz acted willfully and maliciously.  *Grogan v. Garner*, 498 U.S. 279, 286 (1998).  A willful injury is "a deliberate or intentional injury, not merely a  deliberate or intentional act that leads to injury," and does not arise from recklessly or negligently inflicted injuries.  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  The statute addresses intentional torts that usually require the actor to intend the consequences of an act, not just the act itself.  *Restatement*

*(Second) of Torts* § 8A, cmt. a, p. 15 (1964).   An injury by the debtor to another entity is willful and malicious if there is either an objective substantial certainty of harm or a subjective motive to cause harm.   *In re Matter of Miller*, 156 F.3d 598, 601 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999).   Ritz's job was confined to the financial aspects of Chrysalis and its efforts to find more funds to keep the business operational.   Ritz only learned of the debt to Husky in mid January 2007, and then he attempted to resolve the matter with Husky's representatives.   Ritz submits two tables summarizing transfers in and out of Chrysalis and the income earned during this time period.   #10 at pp. 32, 33.   Chrysalis paid employees at the California plant through May 2007 and continued ordering and paying for parts purchased from Dynalyst Manufacturing Corporation.   He also signed the personal guarantee for approximately $133,000 for debts to Arrow Electronic.   He maintains these facts do not support Husky's imposed image of a greedy, desperate owner trying to drain the company of its assets or an objective substantial certainty that Chrysalis would be unable to pay the debt it owed to Husky.

Ritz insists there is no evidence that he had a subjective motive to cause harm, i.e., that he subjectively intended for Chrysalis to purchase material from Husky with the intent that Husky not receive payment, especially because he had no part in the purchasing of those goods.   Nor is there objective substantial

certainty that the transfers would result in Husky's being deprived
of payment.[23]  From January 2006 to May 2007, more that $2.8 million
were transferred in to Chrysalis to keep California manufacturing
operations in business, the inbound transfers were loans, and they
exceeded the outbound transfers by $924,000.  Testimony by Nancy
Finney showed that the transfers were intended to be loans, not
capital contributions, and the company books also reflected that
they were loans.

### Husky's Reply (#16)

Husky characterizes Ritz's arguments and reasoning as deeply
flawed.  First, relating to Husky's first point of error, Ritz's
claim that the $1.1 million in transfers were loan payments is based
on evidence outside the record, is contrary to Fifth Circuit
authority, and was waived when he failed to raise that challenge in

---

[23] Husky responds that the issue is not what Ritz subjectively
intended during the material purchasing process, when the debt from
Chrysalis to Husky was created, but what Ritz subjectively intended
when he transferred $1.1 million of Chyrsalis's cash to other
companies Ritz owned and/or controlled.  A transfer is fraudulent
if the debtor made the transfer without receiving a reasonable
equivalent value in exchange and the debtor was insolvent at the
time, as Judge Bohm found here under Tex. Bus. Org. Code §
24.006(b).  In other words, he found that Ritz subjectively
intended to commit fraud.
      As for objective substantial certainty that the transfers
would result in Husky's being deprived of payment, as a matter of
law transfers not supported by promissory notes reflecting interest
rates and repayments are not "loans," but capital contributions.
*Bartley Tex. Builders Hardware, Inc. v. Swor*, Adv. No. 07-03280,
Civ. A. H-08-644, 2008 WL 5378068, at *2 (S.D. Tex. Dec. 24,
2008)("The absence of either documentation of the loan or interest
payments indicates capital rather than debt."), *rev'd on other
grounds*, *In re Swor*, 347 Fed. Appx. 113, 116 (5th Cir. 2009).

a cross appeal.  The two tables he included to show that the funds
going into Chrysalis were loan repayments are newly created and are
based on at least two exhibits that were not admitted into evidence
at trial.  Ritz's Brief, p. 1, n.1.  Second, a district court may
not set aside a bankruptcy court's findings of fact unless they are
clearly erroneous."  Fed. R. Bank. R. 8013.  "As long as there are
two permissible views of the evidence," the bankruptcy court's
"choice between competing views" is not clearly erroneous.  *Acosta*,
406 F.3d at 373.  The bankruptcy judge's decision need only be
"plausible in light of the record viewed as a whole."  *Id.*  Third,
as a matter of law, undocumented "loans" with no repayment terms or
interest rates, as is true of the transfers into Chrysalis here, are
considered to be capital contributions, not loans.  *Bartley Tex.*
*Builders Hardware, Inc. v. Swor*, Adv. No. 07-03280, Civ. A. H-08-
644, 2008 WL 5378068, at *2 (S.D. Tex. Dec. 24, 2008)("The absence
of either documentation of the loan or interest payments indicates
capital rather than debt."), *rev'd on other grounds*, *In re Swor*, 347
Fed. Appx. 113, 116 (5th Cir. 2009)("Although Mrs. Swor characterizes
the funds they infused into the business as loans and the checks as
repayments, the district court correctly treated money provided to
the business as capital contributions:  A loan is a capital
contribution when payments correlate with the debtor's sense of his
own financial situation and the debtor repays the money at his own
discretion.  The Swors had to show the court--an objective outsider-

-that they were debtors of their company, not just unwise investors. The Swors cannot prove debt.  The absence of either documentation of the loan or interest payments indicates capital rather than debt. The Swors never had its company issue a promissory note for the loan nor did they enable the company to pay interest regularly to them. We agree with the district court that the bankruptcy court clearly erred in its conclusion that the Swors had loaned money to Swor's Glass.").  *See also* 15A Charles Alan Wright, *et al.*, *Federal Practice & Procedure Juris.* § 3904 (2d ed., database updated Apr. 2014).   The Court agrees.

Husky asserts that Ritz's biggest hurdle in claiming that the bankruptcy court erred in finding that Ritz's transfers were made "without Chrysalis receiving reasonably equivalent value" is that Ritz did not raise this argument by cross-appeal. "Although an appellee may argue any ground available to support affirmance of a judgment, he may not argue for a ruling that would expand his legal rights under the judgment that was entered unless he raises it by cross-appeal." *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 905 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2103 (2012); *see also Castellano v. Fragozo*, 32 F.3d 939, 960 (5th Cir. 2003)(en banc), *cert. denied*, 543 U.S. 808 (2004).   Thus Ritz has waived any argument that Judge Bohm's findings that Ritz's transfers were fraudulent was erroneous.

Ritz's argument that *McClellan* was wrongly decided is not

-46-

supported by any case.   Instead, *McClellan* has been followed by
numerous courts in several federal circuits.  #16 and nn. 6 & 7.  As
demonstrated in footnote 19 *supra*, Ritz's claim that *McClellan* stood
for the proposition that fraudulent transfer is constructive fraud
is incorrect.  Moreover Husky insists that it pled and argued its
fraudulent transfer claim at trial.  Even if it had not, Ritz waived
its complaint about the sufficiency of Husky's pleading by not
challenging it in the bankruptcy court.   In addition, Ritz's
transfers of Chrysalis's money are "actual frauds" under TUFTA, Tex.
Bus. & Com. Code §§ 24.005(a), 24.006.  Husky points to the second
sentence of its closing argument at trial in which Husky asserted a
claim under TUFTA even though it did not use the acronym, but cited
and read the entire text of Tex. Civ. Prac. & Rem. Code § 24.006(b)[24]
and argued evidence of five badges of fraud immediately afterward.
#12, $:11-9:3. Husky further points out that its complaint prays for
relief as a result of Ritz's fraudulent transfers, details the
specific amounts involved, names each transferee and the amount of
the transfer it received, identifies the time period when the
transfers were made, and specifies the relationship of each
transferee to Ritz, all of which satisfy Rule 9(b).   These
fraudulent transfers make Ritz personally liable for Chrysalis's

---

[24] Husky observes that this Court can take judicial notice of
the fact that § 24.006(b) is part of TUFTA.  Husky also notes that
Ritz ultimately agreed that Husky asserted claims under TUFTA in
the closing argument.  Ritz's Brief, p. 15.

corporate debt to Husky under Tex. Bus. & Org. Code § 21.223(b). Under *McClellan* and its progeny, Husky maintains, Ritz's transfers are also "actual fraud" that warrants the bankruptcy court's denial of a discharge under § 523(a)92)(A). *McClellan*, 217 F.3d at 893 ("'section 523(a)(2)(A) is not limited to 'fraudulent misrepresentation'"; *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. B.A.P. 2001)("[B]y distinguishing between 'a false representation' and 'actual fraud,' the statute makes clear that actual fraud is broader than misrepresentation.'", and quoting *Collier on Bankruptcy* that actual fraud encompasses "any deceit, trick or design involving direct and active operation of the mind, used to circumvent and cheat another").

Husky asserts that Ritz's debt to Husky is nondischargeable under § 523(a)(2) because Ritz obtained Husky's property by fraudulent transfer to *himself*. Husky argues that the debt at issue here is not the debt that Chrysalis owed Husky for goods sold and delivered to Chrysalis, but the debt which arose by operation of law from Ritz's fraudulent transfers to companies Ritz owned and controlled. In giving Chrysalis's cash to companies that Ritz owned and controlled, Ritz was taking property from, i.e., defrauding, Husky directly.

Even if Ritz's fraudulent transfers are not "actual frauds" for purposes of an exception to discharge in bankruptcy under §

-48-

523(a)(2), contends Husky, they are willful and malicious acts warranting an exception to discharge under § 523(a)(6).

In sum, Husky maintains that Judge Bohm erred in concluding that there was no "actual fraud" by Ritz. Actual fraud is not limited to misrepresentations at inception, but includes fraudulent transfers in violation of TUFTA. The bankruptcy court's other two errors of law, i.e., that exceptions to discharge in bankruptcy under § 523(a)(2)(A) and § 523(a)(6) do not apply here, arise from Judge Bohm's erroneous narrow definition of "actual fraud." The Court should find from the facts at trial that personal liability should be imposed on Ritz for Chrysalis's $163,999.48 contractual debt to Husky under Tex. Bus. Org. Code § 21.223(b) and should except Ritz's debt from discharge in bankruptcy under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

## Court's Decision

The Court addresses the first two points of error together:
**(1) Did the bankruptcy court err when it ignored that fraudulent transfers pursuant to Tex. Bus. & Com. Code § 24.005 are "actual fraud" within the meaning of Tex. Bus. Org. Code § 21.223(b)**?
**(2) Did the bankruptcy court err when it held that Husky could not prevail under 11 U.S.C. § 523(a)(2)(A) because Husky had failed to prove a fraudulent misrepresentation by Ritz that Husky relied upon?**

The general rule of corporate exemption from liability in Texas is that the shareholder of a corporation

> may not be held liable to the corporation or its obligees
> with respect to . . . any contractual obligation of the
> corporation or any matter relating to or arising from the
> obligation on the basis that the holder, beneficial owner,
> subscriber, or affiliate is or was the alter ego of the
> corporation or on the basis of actual or constructive
> fraud, a sham to perpetrate a fraud, or other similar
> theory[.]

*Spring Street Partners-IV, LP v. Lam*, 730 F.3d 427, 442 (5th Cir.
2013), *quoting* Tex. Bus. Org. Code § 21.223(a)(2). An exception is
statutorily recognized "if the obligee demonstrates that the holder,
beneficial owner, subscriber, or affiliate caused the corporation to
be used for the purpose of perpetrating and did perpetrate an actual
fraud on the obligee primarily for the direct personal benefit of
the holder, beneficial owner, subscriber, or affiliate." *Id.,
quoting id.* § 21.223(b). Within the meaning of the Business
Organizations Code for piercing the corporate veil regarding a
contractual obligation, "actual fraud" according to § 2.21 "involves
dishonesty of purpose or intent to deceive." *Id.* at 443, *citing
Tryco Enterprises, Inc. v. Robinson*, 390 S.W. 3d 497, 508 (Tex.
App.--Houston [1st Dist.] 2012, rev. dism'd). Because of the
limitations on the liability of a corporate shareholder, when a
plaintiff seeks to hold an individual shareholder liable, he must
"pierce the corporate veil." *Id.* According to Texas law, "'an
assertion of veil piercing or corporate disregard does not create a
substantive cause of action[;] . . . such theories are purely
remedial and serve to expand the scope of potential sources of
relief by extending to individual shareholders or other business

-50-

entities what is otherwise only a corporate liability.'"   *Id.,*
*quoting In re JNS Aviation, LLC*, 376 B.R. 500, 521 (Bankr. N.D. Tex.
2007), *aff'd*, 395 Fed. Appx. 127, 128 (5th Cir. 2010).

In *Castleberry*, 721 S.W. 2d at 271-73, the Texas Supreme Court
held that a court can ignore the corporate structure "'when the
corporate form has been used as part of a basically unfair device to
achieve an inequitable result.'"   In *Castleberry*, the court further
concluded that the corporate structure could be ignored even if the
plaintiff showed only constructive fraud,[25] rather than actual fraud.
*Id.*   Subsequently, however, the Legislature in § 21.223(a)(2) and
(b) limited that rule to require a plaintiff to prove "actual fraud"
if it related to "any contractual obligation of the corporation."
*Id.* at 444.

Because there was a contractual obligation between Husky and
Chrysalis, and because Judge Bohm determined that Husky has shown
that Ritz caused Chrysalis to be used for the purpose of
perpetrating and did perpetrate an actual fraud on its creditors
primarily for Ritz's direct personal benefit, i.e., he drained

---

[25] "''[C]onstructive fraud is the breach of some legal or
equitable duty which, irrespective of moral guilt, the law declares
fraudulent because of its tendency to deceive others, to violate
confidence, or to injure public interests.''"   *Spring Street*, 730
F.3d at443, *citing Castleberry*, 731 S.W. 2d at 273, *citing Archer
v. Griffith*, 390 S.W. 2d 735, 740 (Tex. 1965).   For constructive
fraud a plaintiff does not have to prove fraud nor an intent to
defraud, but need only show that recognizing the corporate entity
would effect an inequitable result.   *Id., citing Castleberry*, 721
S.W. 2d at 272-73.

Chrysalis of funds and fraudulently transferred those funds to other entities under his control and/or ownership, section 21.233 applies here to impose liability on Ritz, individually.  Nevertheless, Judge Bohm also held that "actual fraud" under Texas law requires a material misrepresentation that was false in order to induce action or inaction, and he found that there was no misrepresentation by the debtor under the facts of this case.  Thus he ruled that Husky failed to satisfy an essential element for establishing actual fraud for either § 22.223 and § 523(a)(2)(A).

This Court has found cases that do not require a misrepresentation to pierce the corporate veil to satisfy "actual fraud" under § 21.223(b) and the standard of "dishonesty of purpose and intent to deceive" for actual fraud, including the Fifth Circuit in *Spring Street*, 730 F.3d at 442.  "Courts may deduce fraudulent intent from all the facts and circumstances," and the "generally look at the totality of a shareholder's actions to determine whether [a corporate director" committed actual fraud.  *Id.* at 443, 445 (finding actual fraud where the defendant created an LLC to which it transferred assets and allowed the company's charter to lapse after it was sued).  The Fifth Circuit concluded that Spring Street could pierce the corporate veil of DKL & DTL on the basis of fraud and impose individual liability on its owners, Long Lam and En Lam:

> We need not resolve whether the standard is invariably that of constructive fraud where fraudulent transfers have occurred, because Spring Street has offered ample evidence to demonstrate Long Lam and En Lam's actual fraud here.

Spring Street as summarized this evidence as follows: (1) they "formed an LLC ten days after their brother Douglas Lam received notice that his debts were being accelerated"; (2) they "paid no consideration for a 25% interest each in his assets"; (3) they "personally signed a paper transferring one of those assets to another family member for no consideration"; (4) they "failed to disclose this fact for over a year while their entity was involved in [this] litigation"; (5) they "tried to evade company liability under TUFTA by allowing the company charter to lapse"; and (6) they "then tried to evade individual liability by claiming that the charter had been reinstated." Long Lam and En Lam, along with the other DKL & DTL members, acted for their direct personal benefit, they had no other interest to serve.

730 F.3d at 445.

In *Tryco Enterprises, Inc. v. Robinson*, 390 S.W. 3d 497, 508, 510 (Tex. App.--Houston [1st Dist.] 2012, pet. dism'd)(For a plaintiff to pierce the corporate veil and impose liability under an alter ego theory of liability, the plaintiff must demonstrate "(1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor and (2) that the corporate fiction was used for an illegitimate purpose."), the court of appeals held that a corporation, Tryco Enterprises, was used by its officers as a means of defrauding Robinson by transferring assets of Tryco that were subject to Robinson's judgment lien in a suit against Tryco to Crown Staffing, which the officers had previously incorporated, leaving Tryco without assets to pay that judgment. There was no representation involved.

Therefore the remaining issue for the first and second points of error is whether such fraudulent transfers under Tex. Bus. &

Commerce Code § 24.005[26] would qualify as "actual fraud" within the meaning of Texas Business Organizations Code § 21.223(b).  A transfer is fraudulent under § 24.005 "if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor.  *Id.*, at § 24.005(a)(1).  Fraudulent intent, and thus fraudulent conduct, may be inferred from "circumstantial evidence and the surrounding circumstances of the transactions." *Kaye v. Lone Star Fund V (U.S.) LP*, 453 B.R. 645, 671 (N.D. Tex. 2011).

     "[I]n the context of piercing the corporate veil, actual fraud ["dishonesty of purpose or intent to deceive"] in not equivalent to the tort of fraud."  *Latham v. Burgher*, 320 S.W. 3d 602, 607 (Tex. App.--Dallas 2010).  To prevail on a fraudulent conveyance claim under § 24.005, a trustee must prove that the debtor made the transfers in question "with actual intent to hinder, delay, or defraud any creditor of the debtor.  He may do so by circumstantial evidence, which TUFTA identifies as "badges of fraud," some of which are codified in a nonexclusive list in § 24.005(b).  *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008).  If the trustee can show four or five "badges of fraud"[27] on the part of the debtor, he can establish intent to commit actual fraud by the debtor.  *Ingalls v. SMTC Corp.*

─────────────

     [26] The purpose of TUFTA is "to prevent debtors from defrauding creditors by placing assets beyond their reach." *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W. 3d 290, 293

     [27] See footnote 12 of this Opinion and Order.

*(In re SMTC Mfg. of Tex.)*, 421 B.R. 251, 199-300 (Bankr. W.D. Tex. 2009).  Judge Bohm found the trustee had proven four badges of fraud by Ritz and therefore met the requirements for fraudulent transfer under § 24.005.

Nevertheless, Husky still cannot prevail.  While the fraudulent transfer without a misrepresentation may qualify as actual fraud under § 22.223(b)(1) to pierce the corporate veil, it cannot meet the requirement under 11 U.S.C. § 523(a)(2)(A) to bar the discharge of the debt, which provides that a debtor may not be discharged from any debt for money to the extent that it was obtained by "false pretenses, a false representation or actual fraud."  In *Field v. Mans*, 516 U.S. 59, 69 (1995), the United States Supreme Court observed that "'It is . . . well established that '[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'"  It held *inter alia* that the terms "false pretenses, a false representation, or actual fraud" are to be given their ordinary common law meanings in 1978.  It indicated, "Then, as now, the most widely accepted distillation of the common law of torts was the *Restatement (Second) of Torts* (1976), which should apply rather than a particular state's law.  *Id.* at 70, n.9.  The Fifth Circuit accordingly, citing *Fields*, has opined that the terms, "false pretenses," "false representation," and "actual fraud" in §

-55-

523(a)(2) are "terms of art . . . [and] are common law terms." *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001). Nevertheless the Restatement does not define "fraud," nor "actual fraud, but references only "fraudulent misrepresentation." *Id.* The *Restatement (Second) of Torts* § 525 (1976) defines fraudulent misrepresentation as follows:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

The Fifth Circuit has observed that it was unclear whether its earlier distinction among the three terms has survived *Fields,* but decided it was not required in *Mercer* to address the question. *In re Mercer*, 246 F.3d at 394-95. In *General Electric Capital Corp. v. Acosta*, 406 F.3d 367, 372 (5th Cir. 2005), however, the Fifth Circuit identified the same elements for false pretenses, false representations and actual fraud.[28]   Because the common law interpretation of § 523(a)(2)(A) requires a misrepresentation and there is no evidence here that Ritz made one, Husky's claim of

---

[28] Even if one assumed the Chrysalis promised to pay its debt to Husky in the future, Husky's claim under § 523(a)(2)(A) would still fail for lack of evidence of scienter.  Chrysalis's promise to pay its debt to Husky in the future could be the basis of a nondischargeable debt under the actual fraud arm of § 523(a)(2)(A) if Husky had proved by a preponderance of the evidence that the debtor had no intention of fulfilling that promise at the time it was made.  *In re Borschow*, 454 B.R. 374, 395 (Bkrtcy W.D. Tex. 2011), *citing In re Roeder,* 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986).

nondischargeability under the statute fails.

As for Husky's challenged reliance on *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), contrary to Husky's argument, its broad interpretation of actual fraud under § 523(a)(2)(A) has not been accepted by everyone.  Among appellate courts rejecting it is the First Circuit Court of Appeals. *See Palmacci v. Umpierrez*, 121 F.3d 781 (1997)(requiring false representation); *In re Spigel*, 250 F.3d 27, 32 (1st Cir. 2001). *See also Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)(strictly examines misrepresentations); *Blacksmith Investments, LLC v. Woodford (In re Woodford)*, 403 B.R. 177, 186-87 (Bankr. D. Mass. 2009)(Feeney, J.)(*McClellan* reading was inconsistent with the Supreme Court's interpretation of actual fraud); *KMK Factoring, LLC v. McKnew (In re Mcknew)*, 270 B.R. 593, 618 n.40 (Bankr. E.D. Va. 2001); *In re Kimmel*, 2006 WL 6810976, at *8 (9th Cir. BAP Cal. Dec. 29, 2006)("Neither the Ninth Circuit nor this Panel has endorsed the approach taken to interpretation of § 523(a)(2)(A) in *McClellan* in any reported decisions," but "there is ample authority in this Circuit instructing that the provisions of the § 523(a) exceptions to discharge should be construed narrowly."), *citing Cal. Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1051 (9th Cir. 1999).  This Court has not found a decision from any court in the Fifth Circuit that has followed *McClellan*.

Therefore the Court agrees with Judge Bohm that since there is

no representation involved in this Adversary Proceeding, Husky fails to prevail under § 523(a)(2)(A) to overturn the discharge of Chrysalis' debt to Husky.

**(3) Did the bankruptcy court err when it held that Husky could not prevail under 11 U.S.C. § 523(a)(6)("A discharge under 727 . . . of this title does not discharge an individual debtor from any debt- . . . for willful and malicious injury by the debtor to another entity or to the property of another entity") because Ritz's fraudulent transfers of Chrysalis's cash were not a willful or malicious injury to Husky?**

Judge Bohm determined,

> The record is wholly devoid of any proof that the Debtor willfully and maliciously injured Husky or Husky's property. While Husky's complaint makes a glancing reference to 11 U.S.C. § 523(a)(6), that alone is not enough to preserve a claim under this provision--no exhibits were introduced, no testimony was adduced, and no briefing was done relating to § 523(a)(6). . . . . Husky provided goods to Chrysalis on an entirely unsecured basis. . . . Typically, complaints under § 523(a)(6) by creditors involved in a business transaction involve secured creditors who are seeking to prevent a discharge of a debt where the debtor has: (1) deliberately sold collateral out of trust and spent the sale proceeds; or (2) deliberately destroyed or damaged the collateral. *See, e.g., Friendly Fin. Serv. Mid-City, Inc. v. Modicue (In re Modicue)*, 926 F.2d 452 (5th Cir. 1991). This Court has found no case law where an unsecured creditor trade creditor [*sic*] has obtained a judgment for nondischargeability under § 523(a)(6) where the debtor simply failed to honor a contractual obligation to pay for the goods or services provided by that creditor. Accordingly, Husky may not prevail under 11 U.S.C. § 523(a)(6).

459 B.R. at 635.   He noted, "'While an intentional breach of

contract can be excepted from discharge under § 523(a)(6) when it is accompanied by malicious and willful tortious conduct, [Husky] . . . failed to identify any tortious action by the [Debtor] that caused a willful and malicious injury.'" *Eagle Sindh, Inc. v. Desai (In re Desai)*, Adv. No. 07-04190, 2009 WL 2855735, at *6, 2009 Bankr. LEXIS 2609, at *19-20 (Bankr. E.D. Tex. Sept. 2, 2009). *Id.,* n.11.

The Fifth Circuit has interpreted "willful" and "malicious" as one, with a single standard: "we hold that an injury is willful and malicious where there is either objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams, Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).

"Secured creditors whose collateral was disposed of by the debtor often assert nondischargeability claims under § 523(a)(6)." 4 *Collier on Bankruptcy* ¶ 523.12(3) (16th ed. 2012). *See also In re Peckham*, 442 B.R. 62, 79 n. 7 (Bkrtcy. D. Mass. 2010)("Litigation under section 523(a)(6) for willful and malicious injuries often arises in the context of conversion of collateral, resulting in courts' focusing on harm to creditors' economic interests."). Judge Bohm stated that he had "found no case law where an unsecured creditor . . . has obtained a judgment for nondishargeability under § 523(a)(6) where the debtor has simply failed to honor a contractual obligation to pay for the goods or services provided by that creditor." 459 B.R. at 635. He emphasized that Husky failed to introduce any exhibits, testimony or briefing to support the

523(a)(6) dischargeability exception here, i.e., "rather than showing that Ritz deliberately sold collateral out of a trust or deliberately destroyed or damaged collateral, Ritz merely failed to honor a contractual obligation to pay for goods or services provided by an unsecured trade creditor."

Not only did Husky fail to show by a preponderance of the evidence that Ritz acted willfully and maliciously, but this Court notes that as an unsecured creditor, Husky did not have a clearly valid claim, lien, right, interest or privilege to the monies transferred out of Chrysalis. A breach of contract suit that is an unsecured debt is dischargeable in bankruptcy. *In re Williams*, 466 B.R. 95, 106 (Bkrtcy. S.D. Tex. 2011).

Accordingly, for these reasons the Court AFFIRMS Judge Bohm's decision.

**SIGNED** at Houston, Texas, this <u>14</u>th day of <u>July</u>, 2014.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE